I7JKHAMS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              15 CR 95 (AJN)

5    STEPHAN HAMILTON,

6                   Defendant.

7    ------------------------------x

8                                             New York, N.Y.
                                              July 19, 2018
9                                             11:05 a.m.

10   Before:

11                   HON. ALISON J. NATHAN,

12                                            District Judge

13
                            APPEARANCES
14

15   GEOFFREY S. BERMAN,
          United States Attorney for the
16        Southern District of New York
     RACHEL MAIMIN
17        Assistant United States Attorney

18   CHARLES O. LEDERMAN
          Attorney for Defendant
19

20

21

22

23

24

25

I7JKHAMS

```
 1              (Case called)

 2              THE COURT:  I'll take appearances of counsel, starting

 3    with the government.

 4              MS. MAIMIN:  Good morning, your Honor.  Rachel Maimin,

 5    for the government.

 6              THE COURT:  Good morning, Ms. Maimin.

 7              And for the defendant.

 8              MR. LEDERMAN:  Good morning, your Honor.  Charles

 9    Lederman, White Plains, New York assigned counsel.

10              THE COURT:  Good morning, Mr. Lederman.

11              And good morning, Mr. Hamilton.

12              THE DEFENDANT:  Good morning.

13              THE COURT:  We are here today for sentencing in United

14    States versus Stephan Hamilton, 15 CR 95.

15              In preparation for today's proceeding, I have received

16    the presentence report that was prepared and is dated July 12,

17    2018.  I'll note that Mr. Hamilton did, at counsel's request,

18    and confirmed by a declaration he submitted, seek expedited

19    sentencing, so the presentence report was disclosed to the

20    Court, and Mr. Hamilton, and the government on July 12, 2018,

21    without an opportunity for a revision process.  In any event, I

22    do have that presentence report.

23              In addition, I have the following submissions:  I have

24    the defense submission, which is dated July 2, 2018.  It has a

25    few exhibits attached to it, which consist of letters from the
```

I7JKHAMS

1  grandmother of Mr. Hamilton, as well as a potential employer,

2  and then I have the government's letter submission, dated

3  July 17, 2018.

4        Counsel, is there anything else I should have in front

5  of me for purposes of sentencing?

6        MS. MAIMIN:  Not from the government.

7        MR. LEDERMAN:  No, your Honor.

8        THE COURT:  Okay.

9        Can you confirm that you have received each other's

10  submissions, please?

11        MS. MAIMIN:  Yes.

12        MR. LEDERMAN:  I'll acknowledge receipt, Judge.

13        THE COURT:  Thank you.

14        I will turn to the presentence report.  Mr. Lederman,

15  I know that you have, but for the record, have you reviewed the

16  presentence report and discussed it with your client?

17        MR. LEDERMAN:  Yes, I have, your Honor.

18        THE COURT:  Mr. Hamilton, did you have an opportunity

19  to review the presentence report?

20        THE DEFENDANT:  No.

21        THE COURT:  All right.  Well, I suppose that's because

22  you did waive your right to review the report in advance of

23  sentencing under Rule 32.

24        MR. LEDERMAN:  Your Honor, if I may clarify.  I was

25  able to discuss it with him in detail over the telephone --

I7JKHAMS

1          THE COURT:  Could you pull down the microphone?

2          MR. LEDERMAN:  I'm sorry, your Honor.

3          If I may clarify.

4          THE COURT:  Go ahead.

5          MR. LEDERMAN:  I was able to discuss the presentence

6     report with Mr. Hamilton in great detail over the telephone.

7          THE COURT:  Okay, all right.  Thank you.

8          Mr. Hamilton, that's an accurate statement?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Ms. Maimin, for the record, have you

11     reviewed the presentence report?

12          MS. MAIMIN:  Yes.

13          THE COURT:  Counsel, setting aside for a moment the

14     calculation of the sentencing guidelines, are there any

15     objections to the report regarding factual accuracy?

16          MS. MAIMIN:  Not from the government.

17          MR. LEDERMAN:  Not from the defense, your Honor.

18          THE COURT:  All right.

19          Hearing no objections, I will adopt the factual

20     recitations set forth in the PSR.  The report will be made a

21     part of the record in this matter and placed under seal.  If an

22     appeal is taken, counsel on appeal may have access to the

23     sealed report without further application to this Court.

24          Turning to the guideline calculation:  As counsel is

25     aware, I'm no longer required to follow the United States

I7JKHAMS

1   Sentencing Guidelines, but I am still required to consider the

2   applicable guidelines in imposing sentence and must, therefore,

3   accurately calculate the sentencing guideline range.

4           Before we turn to the departure question, I do want to

5   just see if there are any objections to the PSR's calculation

6   and analysis of the multiple-count indictment here.  The

7   analysis concludes that the adjusted offense level is 27,

8   Mr. Hamilton's criminal history category is I.  That would

9   produce a guideline range of 70 to 87 months.  However, there

10  is an applicable mandatory minimum term of imprisonment here of

11  20 years total, which is higher than the high end of the

12  guideline range, so pursuant to 5G1.2(b), the guideline

13  sentence of 20 years, which is 120 months on Count Two and 120

14  months to be served consecutively on Count Three, but pursuant

15  to 5G1.2(b), that guideline sentence of 240 months is the

16  guideline sentence according to the calculation in the PSR.

17          Are there any objections to the PSR's calculation of

18  the applicable guideline range?

19          MS. MAIMIN:  Not from the government.

20          MR. LEDERMAN:  No, your Honor.

21          THE COURT:  I know, Mr. Lederman, you make an argument

22  in your paper as to minimal role.  I gather that, even

23  accepting that, it has no bearing on the ultimate calculation?

24          MR. LEDERMAN:  Yes, your Honor.

25          THE COURT:  All right.  Thank you.

1         Hearing no objection, and based on my independent

2   calculation of the guideline range, using the November 1, 2016

3   edition of the sentencing guidelines, I do find that the

4   guideline sentence here is 240 months.

5         Turning to departures:  Ms. Maimin, I presume the

6   government has a motion?

7         MS. MAIMIN:  Yes, your Honor.  We respectfully move

8   the Court at this time to sentence the defendant in light of

9   the factors set forth in Section 5K1.1 of the sentencing

10  guidelines.

11        THE COURT:  I'll discuss the details of the factors

12  more when I come to my sentencing conclusion, but based on the

13  government's letter, the information provided there, and my own

14  observations of Mr. Hamilton during his testimony, I do grant

15  the government's motion, and will depart pursuant to 5K1.1, and

16  will sentence Mr. Hamilton without being bound by the otherwise

17  applicable mandatory minimum sentence, as well as below the

18  guideline sentence.

19        With that, as to what a reasonable sentence is for

20  Mr. Hamilton, in light of both the 5K1.1 factors as well as the

21  3553(a) factors, I'll hear from counsel.  Ms. Maimin?

22        MS. MAIMIN:  Your Honor, I just want to highlight a

23  few points from our submission.

24        It was unusually difficult in this case to convince

25  people to cooperate with the government.  While, obviously, we

I7JKHAMS

1    were able to have a number of people sign cooperation

2    agreements in this case, the norm of this gang against

3    cooperation with law enforcement, even meeting with us, even if

4    you remained silent during a meeting with us and hear us out,

5    was so strong, that we were unable to essentially have the

6    number of the cooperation witnesses that we normally do.

7           Luckily, there were defendants or potential witnesses,

8    such as Mr. Hamilton, who were willing to do the right thing,

9    to come forward, take full responsibility for their crimes,

10   including a number of serious crimes about which we did not

11   know before, and that had a meaningful impact on this case in a

12   number of ways.  I discussed them in the letter, but I want to

13   note, the defendant came in before he was charged in this case.

14   A lot of times when we approach someone who hasn't been charged

15   yet with the possibility of cooperating, they would tell us to

16   pound sand, come back when you actually do charge us, and while

17   we eventually do follow through with that and charge, that

18   gives that person less of a meaningful opportunity to

19   cooperate.  Here, by contrast, because Mr. Hamilton started

20   cooperating so soon after the takedown in this case, he was

21   able to have an extremely important impact on plea discussions

22   in this case.  And I want to give specific examples.

23          For instance, as I mentioned in the letter,

24   Mr. Hamilton was roughly part of a subset of the gang that

25   committed crimes, armed robberies in Westchester County.  We

1    knew about crimes for which Mr. Hamilton or the others had been

2    arrested, but Mr. Hamilton was able to tell us about a number

3    of armed robberies that were never reported to the police, and,

4    because of that, we were able to convince a number of those

5    defendants to plead guilty and avoid having this Court or the

6    government expend additional resources on trial.

7            He also helped us make fair offers to people in terms

8    of drug weights.  As the Court is aware, we tried to have a

9    hierarchy of drug weights in this case, so that people who sold

10   the same amount of crack would be held accountable and relative

11   to people who sold more or less.  Because of witnesses like

12   Mr. Hamilton, we were able to make fair offers to place people

13   properly in the hierarchy of the drug-dealing in this case, so

14   that they were held to the right amount, quantity of drugs, no

15   more and no less than would be fair.

16           Mr. Hamilton also had the opportunity to testify at

17   two different trials in this case.  He prepared assiduously for

18   the trials.  Never once, in any proffer with Mr. Hamilton --

19   and I participated in dozens of them -- not every single one,

20   but dozens of them -- was there a question about his telling

21   the truth.  Everything he said was matched by the other

22   testimony in the case.  And even though he was admitting to

23   crimes that we did not previously know about, and even though

24   he's quite young, and it's a complicated thing to get involved

25   in cooperating with the government and committing to pleading

guilty to such serious crimes without any promise of leniency
at sentencing, he was totally honest and forthcoming about his
crimes.

        The Court will recall in the Carletto Allen trial,
Mr. Hamilton's testimony was key on at least two points.
Number one, the link to BMB -- the link between Mr. Allen's
drug-dealing and BMB was really supplied solely by
Mr. Hamilton, and had the jury not believed Mr. Hamilton, I
don't see how Mr. Allen could have been convicted of
racketeering conspiracy.  There was other evidence, but his
evidence was critical.  He also provided important evidence
that Mr. Allen was a wholesale dealer of marijuana, contrary to
Mr. Allen's testimony on the stand, and, indeed, this Court
found that Mr. Allen had perjured himself.

        I didn't handle the Tyrell trial, but I have spoken to
the prosecutors who did, and I understand that Mr. Hamilton's
testimony was equally truthful and compelling there, where the
stakes were even higher.  It was a murder case, and for some
reason in that case, members of BMB, who were either in jail
when our takedown happened or who had already been released
through sentences, came out en masse to support Mr. Tyrell and
were hissing and heckling Mr. Hamilton.  I believe he was the
first cooperator to testify, perhaps even on the first day of
trial, and he managed to handle that without losing his
composure, continuing to be respectful, not only to the

I7JKHAMS

1   government lawyers, but to the defense lawyers.

2          I believe that all of this speaks to a person who

3   understands the extreme gravity of his crimes, is remorseful,

4   and is committed to changing his ways.  His crimes are

5   extremely serious.  He was not a low-level person in this gang.

6   There is no way in the world we would ever characterize him as

7   having a minor role or having agreed to a plea agreement with a

8   minor-role deduction, but the cooperation that he has provided,

9   his demeanor, and truthfulness, both in proffers, and on the

10  stand, and his commitment, I believe, to living with his

11  grandmother, getting a law-abiding job, and getting out of the

12  Bronx, I think it all speaks to someone who merits significant

13  consideration at sentencing.

14          THE COURT:  All right.  Thank you.

15          Mr. Lederman?

16          MR. LEDERMAN:  Judge, I'll keep it short.  I met

17  Mr. Hamilton a day or two after his 18th birthday, and since

18  then, we've done everything we can to get him to own up

19  responsibility for what he had done so far before that and to

20  do the right thing since.  All I can say at this point is, I'll

21  rely on the filings by the government and myself and the

22  Court's decision.

23          THE COURT:  What is time served at this point?

24          MS. MAIMIN:  Your Honor, the defendant has been in

25  jail on this case or related conduct since February 2, 2016.

I7JKHAMS

1          THE COURT:  So we'll both do the math and see who gets
2    there first.
3          MS. MAIMIN:  I believe it is approximately two years,
4    five months, and 17 days.
5          THE COURT:  Okay.
6          My only question -- maybe it's for both counsel, but
7    I'll start with Ms. Maimin because she suggested it.  The only
8    hesitation I have, though this will obviously be a very
9    substantial departure, I think, is the question of
10   remorsefulness.  I didn't see that in the trial testimony with
11   respect to Mr. Allen.  I saw a very forthcoming, honest,
12   obviously useful witness in Mr. Hamilton.  I remember, in
13   particular, a moment when defense counsel asked:  "Wouldn't
14   lying help you out here?"  And I think Mr. Hamilton's response
15   was:  "If lying helped me out here, I would lie.  It won't, and
16   so I'm telling the truth," which was a very powerful moment, I
17   think, for the jury, but, also, it did suggest, I think,
18   Mr. Hamilton's just honest realization of where he is and what
19   his position is.
20         I do look, as you know, in this case and others, to
21   see a sense of remorsefulness and a sense of commitment to
22   rehabilitation.  So I'll ask both counsel:  Aside from the
23   cooperation, which is obviously hugely significant, what would
24   I look to to have a sense of confidence as to that?
25         MS. MAIMIN:  First of all, while, obviously, he is not

1   required to, I do expect Mr. Hamilton will address your Honor

2   today.  At least during the Allen trial -- and I'm guessing it

3   was even worse during the Tyrell trial -- Mr. Hamilton was in a

4   true state of terror before testifying.  So, to the extent any

5   emotions of remorse did not come through, I think it was, in

6   part, because of that.  But he has been extremely emotional in

7   proffers.  He has wept on a number of occasions about the

8   situation he finds himself in, not just that he got caught, but

9   what he has put his family through and fears for his future.

10  Looking towards the practical side, he does have a plan for

11  when he gets out.  And I think that you have to have a certain

12  amount of hope for yourself and a plan to lead a law-abiding

13  life.  You have to have that in order to succeed, and I believe

14  that Mr. Hamilton and his lawyer have stated, he's going to

15  live with his grandmother in Rockland County, nowhere near the

16  Bronx, and he is going to get a job.  Mr. Hamilton is desperate

17  for his freedom.  I think that that is why he made that

18  statement in court.  He's just not capable of lying, so when

19  asked a question, he just told the truth, but I don't think

20  that means that he is necessarily going to be a menace to

21  society.  I have told Mr. Hamilton that it's very important

22  that we never, ever see him again after this.  I believe he

23  understands that.  And I hope that he will be less anxious

24  today and more able to speak directly to your Honor about the

25  remorse question.

1            THE COURT:  Thank you.

2            Mr. Lederman?

3            MR. LEDERMAN:  Your Honor, if I may, from the first

4    time I met Mr. Hamilton, we have been discussing ways to

5    extricate him from the neighborhood he grew up in and where he

6    got himself into all of this trouble.

7            Unfortunately, he had this very difficult childhood,

8    and without going into great detail about it, what we have been

9    trying to do is look for ways -- he's been very anxious to go

10   up and start over with his grandmother up in Rockland County,

11   get a job.  We also were looking at other things.  He was even

12   talking about trying to get a waiver to join the military

13   because he's so young, and he didn't have any state charges

14   before this.  There was a possibility.

15           Like Ms. Maimin said, we've been looking forward to

16   the future, and all of that has been with the -- under the

17   guise of getting him out of -- he doesn't want to be where he

18   grew up, he wants to get out of there.  So that's all we can

19   tell you, but I'm sure Mr. Hamilton has something that he wants

20   to say to you as well.

21           THE COURT:  All right.  I'm happy to hear that.

22           Thank you, Mr. Hamilton.  As you know, you're not

23   required to make a statement, sir, but you're welcome to if

24   you'd like to.

25           THE DEFENDANT:  I just want to say this is more of a

I7JKHAMS

1    life-changing situation for me.  At the time I was young

2    committing crimes, and I apologize for my criminal acts, to the

3    victims, and I'm just ready to prove everybody wrong, my

4    family, and to show them that I can do it, and I can succeed,

5    and I can finish school.  When I leave here, or if I leave,

6    when I do get released in the future, I'm going out to my

7    grandmother's house, spend time with my mother, she's diagnosed

8    with schizophrenia, and she doesn't even know I'm locked up

9    right now.  So it's kind of hard on me.  And they have a job

10   ready for me, but they providing me with a job at Burger King,

11   and I am ready to go back to trade school, and learn a trade,

12   and finish getting my GED, and I just want to thank my lawyer

13   for giving me a good option, persuading me to cooperate, and I

14   want to thank the government for giving me a chance to

15   cooperate, because this is just a life-changing thing.  If I

16   would never have had this chance, there's no telling where my

17   life would have been going right now.  And I just wanted to say

18   thank you.

19             THE COURT:  Thank you, Mr. Hamilton.

20             Counsel, anything else I should consider, any reason

21   why sentence should not be imposed at this time?

22             MS. MAIMIN:  Not from the government.

23             MR. LEDERMAN:  No, your Honor.

24             THE COURT:  As I've stated, the otherwise applicable

25   guideline range in this case would be 240 months' imprisonment,

I7JKHAMS

1    but I will, as I indicated, based on 5K1.1, sentence

2    Mr. Hamilton without regard to the otherwise applicable

3    mandatory minimum sentence and without being bound by that

4    guideline sentence.

5            In any event, under the Supreme Court's decision in

6    Booker and its progeny, the guideline range is only one factor

7    the Court must consider in deciding the appropriate sentence.

8    I'm also required to consider the other factors set forth in

9    18, U.S.C., Section 3553(a).  These include the nature and

10   circumstances of the offense and the history and

11   characteristics of the defendant, the need for the sentence

12   imposed to reflect the seriousness of the offense, to promote

13   respect for the law, and to provide just punishment for the

14   offense, to afford adequate deterrence to criminal conduct, to

15   protect the public from further crimes of the defendant, and to

16   provide the defendant with needed education or vocational

17   training, medical care, or other treatment.

18           I am to take into account the kinds of sentences

19   available; as I've said, the guideline range; any pertinent

20   policy statement; and the need to avoid unwarranted sentence

21   disparities among defendants with similar records who have been

22   found guilty of similar conduct.  I am required to impose a

23   sentence sufficient, but no greater than necessary, to comply

24   with the purposes that I have just described.

25           I have given substantial thought and attention to the

I7JKHAMS

appropriate sentence in this case in light of the 3553(a)

factors and the appropriate purposes of sentencing, as

reflected in that statute.  I do begin by making clear that

Mr. Hamilton stands convicted of very serious offenses, and,

specifically, he pled guilty to his involvement in the BMB gang

conspiracy.  In that capacity, he sold drugs, including crack

cocaine, and participated in violent crimes, including

robberies and multiple shootings.  BMB is, as we know, a

violent street gang that operated in the Bronx.  Members and

associates trafficked in narcotics, including crack cocaine,

marijuana, prescription pills.  It also kept firearms and

engaged in acts of violence, including shootings, stabbings,

and gang assaults.  BMB has a violent cultural norm against

snitching and cooperating.

        Given Mr. Hamilton's membership in BMB and the violent

conduct he engaged in in furtherance of the conspiracy, serious

punishment is warranted in order to deter Mr. Hamilton and

others, reflect the seriousness of the offense, promote respect

for the law, and provide just punishment for the offense.

        There can be no discussion of the appropriate sentence

here without sustained focus on Mr. Hamilton's extraordinary

cooperation.  For each 5K1.1 factor, Mr. Hamilton stands out

for his cooperation.  His information was significant, it was

useful, it was truthful, complete and reliable, it was timely

provided, and it came at great risk to himself.  But those

I7JKHAMS

generic descriptions do not capture the critical role played by
Mr. Hamilton.  I want to make just a few detailed observations
in this regard.

First, I witnessed Mr. Hamilton testify in the trial
of Carletto Allen.  He was extremely forthcoming and honest,
and he was, as Ms. Maimin noted, critical to the jury's
determination of Mr. Allen's involvement, membership
involvement, association with BMB, as well as the quantity of
drugs that were sold.  If the jury did not believe
Mr. Hamilton, it is likely the case that they would have
concluded differently than they did, and it's not surprising to
me that the jury believed Mr. Hamilton.  He was, I think,
obviously honest in his testimony throughout trial, and, by all
accounts, that was the case in the other trial in front of
Judge Rakoff, in which Mr. Hamilton provided extensive
testimony despite circumstances that were, no doubt,
frightening and intimidating.

Second, as the government's 5K letter makes clear,
much of what is known about the details of BMB and, therefore,
the successful prosecution in this case of over 60 individuals
turned in significant measure on information provided by
Mr. Hamilton.  His efforts fundamentally aided the government
in this critical law enforcement effort and no doubt has made
the community, otherwise ravaged by BMB, safer.

Third, much of what the government knows about

1  Mr. Hamilton's own crimes came through his own truthful

2  proffers.  Mr. Hamilton's very substantial otherwise applicable

3  guideline range is primarily the result of the truthful

4  inculpatory information he provided to the government.

5       And, lastly, I'll note what while almost every

6  cooperator puts himself at some level of risk, Mr. Hamilton

7  faced enormous risk in light of the violent and retaliatory

8  nature of BMB.  As noted, the gang has a well-known norm

9  against snitching, and information from gang members was not

10  forthcoming.  Mr. Hamilton's cooperation was obviously

11  critical, and he provided it in the face of grave risk to

12  himself and family members.

13       In addition to these factors, I do take into account

14  the history and characteristics of the defendant.  He has faced

15  substantial difficulties in his young life.  I'm encouraged by

16  his early plans toward rehabilitation and reentry that include

17  a plan to live not in the area where this gang thrived, but in

18  Rockland County with his grandmother, and the prospect of a

19  job.  I also note that Mr. Hamilton is young, he's obviously

20  intelligent, and I believe that with drug rehabilitation, job

21  training, and education, I believe his future is promising.

22       For all of these reasons, I do conclude that the time

23  Mr. Hamilton has served in custody, which is approximately 125

24  months, coupled with a significant term of supervised release,

25  is sufficient, but no greater than necessary, to meet the

I7JKHAMS

1    purposes of punishment I earlier described.

2          Mr. Hamilton, I'll now formally state the sentence.

3    I'll ask you to please rise, sir.

4          It is the judgment of this Court that you be sentenced

5    to time served, to be followed by five years of supervised

6    release.

7          You may be seated, sir.

8          During your term of supervised release, the standard

9    conditions of supervision shall apply.  In addition, you will

10   be subject to the following mandatory conditions:  You must not

11   commit another federal, state, or local crime; you must not

12   unlawfully possess a controlled substance; you must refrain

13   from any unlawful use of a controlled substance.  I'm going to

14   impose a special condition regarding drug testing and

15   treatment.  You must cooperate in the collection of DNA, as

16   directed by the probation officer.  As I said, those are the

17   mandatory conditions.

18         The standard conditions of supervision, which are

19   outlined on pages 35 through 36 of the PSR, also apply, and, in

20   addition, you'll be subject to the special conditions also

21   outlined on page 36 of the PSR.  Specifically, you must submit

22   your person, residence, place of business, vehicle, and any

23   property or electronic devices under your control to a search

24   on the basis that the probation officer has reasonable

25   suspicion that contraband or evidence of a violation of the

I7JKHAMS

1    conditions of supervised release may be found, and that search

2    must be conducted at a reasonable time and in a reasonable

3    manner.  Failure to submit to a search may be grounds for

4    revocation of your supervised release.

5          I'm also imposing the special condition that you

6    participate in an outpatient treatment program approved by the

7    United States Probation Office, which may include testing to

8    determine whether you have reverted to using drugs or alcohol.

9    And you must also participate in a cognitive behavioral

10   treatment program under the guidance and supervision of the

11   probation officer.  I do recommend that you be supervised in

12   your district of residence.

13         I won't go through all of the standard conditions --

14   those are outlined -- but one of them is that you seek

15   employment.  I will check in on that, Mr. Hamilton, to make

16   sure that you have the resources you need to gain employment

17   and to make sure that you are employed during your period of

18   supervised release, unless you're in school and, therefore,

19   excused from employment.

20         I'm going to waive the fine, because I don't believe

21   that you have the ability to pay the fine.  I am imposing a

22   mandatory special assessment of $100 per count, so $300 total,

23   which shall be due immediately.

24         Does either counsel know of any legal reason why this

25   sentence shall not be imposed as stated?

I7JKHAMS

1          MS. MAIMIN:  No, your Honor.

2          MR. LEDERMAN:  Your Honor, I couldn't hear so well

3    when you said the $300 is due?

4          THE COURT:  Immediately.  It's the mandatory special

5    assessment of $100 per count.

6          MR. LEDERMAN:  Is there any way, Judge, that that can

7    be converted to a judgment or something?  I don't know that

8    Mr. Hamilton has the resources.

9          THE COURT:  I don't believe so.  It is a statutorily

10   mandatory assessment of $100 per count.

11         Ms. Maimin, do you have any information on what

12   happens in the event that he doesn't have the funds?

13         MS. MAIMIN:  I mean, he's not going to be kept in

14   prison.  I will look into it.

15         THE COURT:  Okay.

16         MR. LEDERMAN:  If I may share with the Court, at least

17   in state courts, it's easy for us to convert to a judgment.  I

18   don't know how it works here.

19         THE COURT:  You'll look into that, and if you'd like

20   to make an application to the Court, feel free to submit it.

21         MR. LEDERMAN:  Thank you, your Honor.

22         THE COURT:  There's -- I believe a payment plan can be

23   worked out, but it is a mandatory assessment.

24         MR. LEDERMAN:  Thank you.

25         THE COURT:  Thank you.

1           Anything else, Mr. Lederman?

2           MR. LEDERMAN:  No, your Honor.

3           THE COURT:  The sentence as stated is imposed.  I do

4    find the sentence is sufficient, but not greater than

5    necessary, to satisfy the sentencing purposes that I described

6    earlier.

7           Mr. Hamilton, upon release, you will have the guidance

8    and support of the probation department as you reestablish your

9    day-to-day life during your period of supervision.  I do urge

10   you to take advantage of the resources that probation provides,

11   including helping with job training and placement and helping

12   you find your employment, so do take advantage of those

13   resources.  The folks in probation are committed to helping you

14   succeed.

15          That said, I have to caution you, you must comply

16   strictly with all of your conditions of supervised release.  If

17   you are brought back before me for a violation of those

18   conditions, I may sentence you to another term of imprisonment,

19   and I hope and expect you won't put me to that decision.

20          Are there any remaining counts or underlying times?

21          MS. MAIMIN:  No, your Honor.

22          THE COURT:  Mr. Hamilton, I see no basis for an

23   appeal, but I am required to inform you of your appellate

24   rights.  To the extent that you have not given up your right to

25   appeal your conviction and your sentence through your plea of

I7JKHAMS

```
1    guilty and the agreement that you entered into with the

2    government in connection with that plea, you have the right to

3    appeal.  If you're unable to pay the cost of an appeal, you may

4    apply for leave to appeal in forma pauperis, meaning you don't

5    have to pay any filing fee.  The notice of appeal must be filed

6    within 14 days of the judgment of conviction.

7            The remaining issue to discuss, counsel, is the ending

8    of delayed docketing and unsealing of the case?

9            MS. MAIMIN:  Yes, your Honor.  We respectfully request

10   that the Court end delayed docketing and unseal all the docket

11   entries in this case.

12           THE COURT:  Okay.

13           MR. LEDERMAN:  I have nothing to add, your Honor.

14           THE COURT:  The case is hereby ordered unsealed, which

15   will enable the filing of the judgment, and in light of

16   Mr. Hamilton's public testimony, his cooperation is known, and

17   so I see no reason to maintain the sealed documents in this

18   case.

19           I have signed an order indicating that Mr. Hamilton

20   has been sentenced to time served, which I'll give to my deputy

21   for copies to the marshals.

22           Counsel, is there anything else that I can address at

23   this time?

24           MS. MAIMIN:  Not from the government.  Thank you.

25           MR. LEDERMAN:  No, your Honor.  Thank you.
```

I7JKHAMS

1              THE COURT:  Mr. Hamilton, good luck to you, sir.

2              THE DEFENDANT:  Thank you.

3              THE COURT:  We are adjourned.

4                              * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25